**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHARLES JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:13-cv-1717 |
| | ) | |
| v. | ) | Judge Nora Barry Fischer |
| | ) | |
| Officer ERIC DAVIS, as an agent, | ) | |
| OFFICER RONALD ZYGUMTOWICZ as an | ) | |
| agent, OFFICER SHAWN ARLETT as an | ) | |
| agent, OFFICER PAUL ABLE as an agent, | ) | |
| SCOTT TOWNSHIP POLICE | ) | |
| DEPARTMENT, COLLIER TOWNSHIP | ) | |
| POLICE DEPARTMENT, THE | ) | |
| MUNICIPALITY OF SCOTT TOWNSHIP a | ) | |
| Municipality, AND THE MUNICIPALITY | ) | |
| OF COLLIER TOWNSHIP, a Municipality, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

On December 26, 2005 Plaintiff Charles Jackson was arrested and charged with various theft and drug- related offenses. He was subsequently convicted in the Allegheny County Court of Common Pleas on numerous charges and sentenced to 5 to 10 years of incarceration. After serving approximately four years of his prison term, his drug convictions were vacated and he was released from custody. Plaintiff now brings this civil rights action against the municipalities of Scott Township and Collier Township, their respective police departments, and certain of their police officers based on the Defendants' alleged wrongful acts in connection with his criminal arrest and prosecution.

Presently pending before this Court are several motions to dismiss the complaint. For the reasons that follow, these motions will be granted.

1

# I.  BACKGROUND

The relevant factual background has been aptly summarized by the Pennsylvania appellate and trial courts as follows:[1]

> On December 26, 2005, Jackson, [Jennifer Marie Ballard ("Ballard")], and [Douglas Ray ("Ray")] went into the Walmart in Scott Township.  Walmart security guard Ronald Hargenrader ["Hargenrader"] noticed the three in the electronics department acting suspiciously, *e.g.*, putting high-priced items into a shopping cart without looking at the prices.  One of the men then placed a blanket on top of the shopping cart to cover the items.  Hargenrader notified his supervisor, Tina Jordan ["Jordan"], that the three suspicious individuals were heading to the check-out clerk at the register where the three were waiting in line.  Jordan notified the store manager about the situation and proceeded to the check-out counter.
>
> Ballard attempted to pay for the items using a stolen check, driver's license and social security card belonging to Marlene Gillock ["Gillock"].  The driver's license photograph had been altered so that Gillock's face was burned off.  When the assistant store manager realized that Ballard, Ray and Jackson were attempting to purchase the merchandise by check, using altered identification, he would not let the sale proceed.  The three then immediately left the store, leaving behind the check, driver's license and social security card.
>
> Hargenrader and Jordan followed the three out of the store and into the parking lot.  As Jordan pursued the three actors, she telephoned the Scott Township Police Department from her cell phone, requesting that a patrol officer call her back regarding the incident.  Scott Township Police Officer Alan Ballo immediately telephoned Jordan … and was informed that Jordan and Hargenrader were following the actors through the Walmart parking lot.  Officer Ballo drove in a marked cruiser toward the Walmart, while talking on the phone with Jordan.  *En route*, Jordan informed Officer Ballo that the actors got into a van with an Ohio license plate.  Officer Ballo spotted a van with an Ohio license plate and stopped the van on I-79 near the Carnegie exit.  Ballard was in the driver's seat of the van, Ray was in the passenger seat, and Jackson was crouched in the back of the van.

[1] Because Plaintiff's claims in this litigation are founded upon developments in his state criminal proceedings, this Court will take judicial notice, throughout its memorandum opinion, of the relevant rulings in Plaintiff's criminal case.  *See Parks v. Township of Portage, Cambria County,* 385 F. App'x. 118, 120 (3d Cir. 2010) (where the plaintiff's federal civil claims made numerous references to the judicial proceedings in Pennsylvania state court that resulted in the razing of his family home, the federal court "can, and will, take judicial notice of the publicly available opinions rendered by the state courts in those proceedings, as they provide the relevant background to the present suit.") (*citing McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir.2009) (explaining that the "court may take judicial notice of a prior judicial opinion")).  *See also Lumen Const. v. Brant Const.,* 780 F.2d 691, 697 (7th Cir.1985) ("[T]he official record of the parallel state case is a proper object for judicial notice.") (cited in *Parks, supra,* at 120).

Ballard, Jackson and Ray were removed from the vehicle and taken into custody. Officer Eric Davis of the Collier Township Police Department was one of the officers who responded to a request for back-up and proceeded to the scene of the stopped van on I-79. Officer Davis and the other responding officers began to conduct an inventory search of the van because, consistent with Scott Township Police Department policy, it had to be impounded and transported to the Scott Township Police Department. Officer Davis entered the van from the rear and found Ray's jacket sitting between the two front seats. The jacket pocket contained four small bags of marijuana. Officer Ronald Zygmuntowicz[2] of the Collier Township Police Department, who also responded to the request for back-up, was inside the van attempting to inventory the items located in the rear of the van. Officer Zygmuntowicz found a black bag between the front and back seats which contained small baggies of marijuana and crack cocaine, and a CD case which opened into a digital scale. He then noticed a small baggie of crack cocaine inside the door handle on the front passenger side. When Officer Davis and Officer Zygmuntowicz discovered the drugs, they stopped the inventory search and handed over the contraband to Officer Shawn Arlet of the Scott Township Police Department, who then had the van towed to the Scott Township Police Department for closer inspection.

On December 27, 2005, Officer Paul Abel of the Scott Township Police Department executed a search warrant on the van. The search revealed mink coats, Snow King boots, two pairs of brown work gloves, a gold necklace, and two Walmart receipts. Officer Abel did not find any drug paraphernalia … during the search.

The total weight of the marijuana was 164.88 grams, packaged into smaller bags with each containing approximately 1.25 grams. The street value of the marijuana was $10 per bag with an approximate total value of $1319. The total weight of the crack cocaine was 29.03 grams, divided among 13 baggies. Each bag contained approximately 20 pieces of crack cocaine, valued at $20 per piece. Consequently, the approximate value of the crack cocaine was $4460. Detective Martin Zimmel, based upon his 27 years of experience with the Allegheny County Police Department, testified as an expert in the area of narcotics trafficking and concluded that the drugs had been possessed for purposes of sale. His opinion was based upon the amount and value of the drugs, the packaging, and the digital scale.

Ballard and Ray admitted to going into Walmart with Jackson and filling two shopping carts with items, including a computer. Ballard also admitted to using Ms. Gillock's check, driver's license and social security card to attempt to purchase the items.

Trial Court Opinion, 5/22/09, at 4-8.

---

[2] Our docket reflects that the correct spelling of this officer's surname is "Zygumtowicz."

On December 26, 2005, a criminal information was filed against Jackson, charging him with [two counts of possession of a controlled substance with intent to deliver, two counts of possession of a controlled substance, and one count each of possession of drug paraphernalia, criminal attempt to commit retail theft, and criminal attempt to commit theft by deception] as well as other offenses. Jackson, Ray, and Ballard were tried as co-defendants in a jury trial. [ ] At the conclusion of the Commonwealth's case, Judge Allen dismissed several charges. The jury convicted Jackson of the above-mentioned remaining offenses. The trial court sentenced Jackson to a prison term of five to ten years on one count of possession with intent to deliver, and to no further penalty on the remaining charges.

*See* Scott Twp. Def.s' Appendix to Concise Statement of Material Facts, Ex. A [ECF No. 14-1], Precedential and Non-Published Decision in *Commonwealth v. Jackson*, No. 920 WDA 2008 at 1-4 (Pa. Super. Ct. Jan. 7, 2010) (all alterations in the original except for the final three alterations) (ellipsis in the original) (internal footnote omitted).

Plaintiff subsequently appealed his conviction and sentence to the Pennsylvania Superior Court. In doing so, Plaintiff specifically raised the following issue:

Did the trial court (Judge Borkowski) err in denying Jackson's post-sentence Motions without a hearing since the trial court (Judge Allen) erred in denying Jackson's Motion to suppress the drugs, *etc.* found in the van since the search was illegal and not associated with an inventory of the vehicle?

*Commonwealth v. Jackson,* 920 WDA 2008 at 4.

On January 7, 2010, the Superior Court issued a memorandum opinion affirming the judgment of sentence. *See Commonwealth v. Jackson,* 920 WDA 2008. With regard to Plaintiff's challenge concerning the search of the van, the Superior Court relied on "the well-reasoned trial court Opinion" in concluding that "the trial court did not err in denying Jackson's Motion to suppress." *Commonwealth v. Jackson, supra,* at 7 (citing Trial Court Opinion, 5/22/09, at 8-10).[3] Plaintiff's Petition for Allowance of Appeal was subsequently denied by the

---

[3] The trial court's opinion is not part of the record in this case but is quoted below at p. 5 in our discussion of Jennifer Ballard's appellate proceedings.

Pennsylvania Supreme Court on June 30, 2010. *See* Scott Twp. Def.s' Appendix to Concise

Statement of Material Facts, Ex. C [ECF No. 14-3], Order of Court, *Commonwealth v. Jackson*,

No. 52 WAL 2010 (Pa. June 30, 2010).

Meanwhile, Plaintiff's co-Defendant, Jennifer Ballard, pursued her own appeal from the

trial court's judgment of conviction and sentence. Among the issues raised by Ballard on appeal

was whether "[t]he trial court erred in not suppressing the drug evidence seized from the

warrantless search of the van[.]" Scott Twp. Def.s' Supplement to Appendix, Ex. D [ECF No.

22-1], Non-Precedential and Non-Published Decision in *Commonwealth v. Ballard,* No. 2028

WDA 2007 at 4 (Pa. Super. Ct. Feb.18, 2010) (first alteration in the original).

In addressing Ballard's appeal, the Superior Court concluded that it "need not determine

if the trial court erred in denying [Ballard's] motion to suppress because this issue was already

decided by this Court in [her] co-defendant's case." Id. at 5. The Court explained:

> In **Commonwealth v. Jackson,** 920 WDA 2008, unpublished memorandum (Pa.
> Super. filed January 7, 2010), Jackson argued that the trial court erred in denying
> his motion to suppress the drugs and other evidence found in the van "since the
> search was illegal and not associated with an inventory of the vehicle." **Id.** at 4
> (citing Jackson's brief at 3-4). Concluding that the trial court had properly denied
> Jackson's motion to suppress, we relied "on the well-reasoned trial court
> [o]pinion," which stated that:
>
>> Jackson, [Appellant] and Ray were stopped in Jackson's van on I-79 after the
>> three actors had attempted to steal merchandise from Walmart. Scott Township
>> police officers were assisted by Collier Township police officers on I-79 where
>> the van was stopped on the side of the road. Since the three occupants of the van
>> were taken into custody, the van could not be left on the side of I-79 and was to
>> be towed back to the police station. Based upon the Scott Township Police
>> Department's inventory search policy, the officers were required to inventory the
>> items inside the van in order to secure the vehicle and to insure that they account
>> for the items inside the vehicle.
>>
>> Consequently, the responding officers began to inventory the items inside the van
>> while at the scene. When the officers discovered drugs, they stopped their
>> inventory search and had the van towed to the Scott Township Police Department
>> in order to obtain a search warrant to conduct a search of the van. Additionally,

the officers believed it would be safer to tow the vehicle before completing the inventory search, due to heavy traffic at that hour as well as the fact that it was getting dark outside.

Based upon these facts, the suppression court correctly concluded that the officers were conducting an appropriate inventory search of Jackson's van in order to secure the van and its contents before having it towed to the station. Consequently, the drugs and paraphernalia discovered incident to this lawful inventory search were legally seized, and … [the] denial of Jackson's motion to suppress was not error.

*Commonwealth v. Ballard, supra,* at 5-6 (citing "Jackson's Trial Court Opinion, 5/22/09, at 9-10") (emphasis, alterations, and ellipsis in the original). The Superior Court determined that Ballard's challenge to the search of the van was essentially the same argument that Plaintiff had previously raised on appeal – namely "that the inventory search was illegal." *Id.* at 6. Having previously rejected the same argument proffered by Plaintiff, the Superior Court concluded that it was bound by the "coordinate jurisdiction rule" to similarly reject Ballard's challenge to the inventory search.[4] *Id.* at 7 ("[T]he coordinate jurisdiction rule mandates that we not alter the resolution reached in **Jackson**."). The court went on to consider and reject Ballard's second argument, resulting in an affirmance of her conviction and sentence. *Id.* at 7-10.

Ballard subsequently filed a Petition for Allowance of Appeal, which the Pennsylvania Supreme Court granted on January 12, 2011. In a *per curiam* ruling, the Pennsylvania Supreme Court determined that the Superior Court had erred in its application of the coordinate jurisdiction doctrine, inasmuch as Ballard had not been a party to Plaintiff's appeal and had raised "distinct legal challenges" in her own appeal to the Superior Court. *See* Allocatur Docket Sheet, *Commonwealth v. Ballard,* 279 WAL 2010 (Pa.) (*Per Curiam* Order dated Jan. 12, 2011).

---

[4] As the Superior Court explained, "[t]he coordinate jurisdiction rule, put simply, states that 'judges of coordinate jurisdiction should not overrule each other's decisions.'" *Commonwealth v. Ballard,* 2028 WDA 2007 at 6 (citing *Zane v. Friends Hosp.,* 836 A.2d 25, 29 (Pa. 2003)).

Accordingly, the Pennsylvania Supreme Court remanded the case to the Superior Court so that the latter could conduct a merits review of Ballard's challenges to the legality of the inventory search of the van. *Id.*

On remand, the Pennsylvania Superior Court ruled that the trial court had erred in denying Ballard's motion to suppress evidence seized as a result of the officers' warrantless search of the van. In relevant part, the Superior Court wrote:

> we are compelled to conclude that the Commonwealth failed to meet its burden of proving the legitimacy of the inventory search in this case. Most notably, the evidence established that the two police officers actually searching inside the van were from the [Collier Township Police Department] which had absolutely no policy regarding inventory searches. While [Scott Township Police Department] police apparently had an unwritten procedure for such searches, they never conveyed it to the CTPD officers. Additionally, neither department possessed any policy for the handling of closed containers, and the evidence proffered at the hearing raised considerable doubts that the search was conducted for inventory purposes only. Accordingly, the totality of this evidence necessitates a determination that the inventory search was unreasonable and, therefore, unconstitutional.
>
> Thus, we conclude that the court erred in denying [Ballard's] motion to suppress and we are required to vacate [Ballard's] judgment of sentence for the crimes of [possession with intent to deliver], possession of a controlled substance, and possession of drug paraphernalia. As [Ballard] does not challenge her remaining convictions, we affirm her judgment of sentence for those offenses.

*See* Pl.'s Reply to Scott Twp. Def.s' Untimely Resp., Ex. A [ECF No. 20-1], Excerpt from Non-Precedential and Non-Published Decision in *Commonwealth v. Ballard*, No. 2028 WDA 2007 at 12-13 (Pa. Super. Ct. April 21, 2011) (*per curiam*).

On June 28, 2011, Plaintiff filed a motion for post-conviction collateral relief in the Allegheny County Court of Common Pleas. *See* Br. Supp. Mot. to Dismiss filed by Defs. Davis,

---

[5] Although not formally of record, the Pennsylvania Supreme Court's *per curiam* ruling is reflected on that Court's official docket and is a matter of public record which can be judicially noticed by this Court. *See Orabi v. Attorney General of the U.S.,* 738 F.3d 535, 537 n. 1 (3d Cir. 2014) (court observing that it "may take judicial notice of the contents of another Court's docket").

Zygumtowicz and Collier Twp. Police Dept., Ex. 1 [ECF No. 26-1], Docket Sheet in

*Commonwealth v. Jackson*, No. CP-02-CR-4322-2006 (C.C.P. Allegheny Cty.) at p. 13. The

court's docket sheet indicates that Plaintiff's convictions for the drug-related offenses were

vacated on December 1, 2011 and he was resentenced on that date. *Id*. at 7-8, 14-15. Although

the PCRA court's ruling is not part of the record before this Court, Plaintiff alleges in his

complaint that his PCRA motion was granted based upon the Superior Court's ruling in

*Commonwealth v. Ballard* that the officers' search of the van was unconstitutional. (*See* Compl.

[ECF No. 1] at p. 1 ("all of [Plaintiff's] drug related charges were **reversed** and **vacated** due to

the fact that [the] Superior Court ruled that what the Defendant Officers called 'an inventory

search' was **Constitutionally unreasonable and was carried out for investigative purposes**

**instead of permissible inventory purposes.**" (citing to *Commonwealth v. Ballard,* 2028 WDA

2007) (emphasis in the original).) According to the complaint, Plaintiff was released from

custody on December 5, 2011. (Compl. p. 1.)

## II. PROCEDURAL HISTORY

Based upon the foregoing events, Plaintiff commenced this civil action, naming as

Defendants Officer Eric Davis, Officer Ronald Zygumtowicz, Officer Shawn Arlett, Officer Paul

Able, the Scott Township Police Department, the Collier Township Police Department, the

municipality of Scott Township, and the municipality of Collier Township. Plaintiff's *pro se*

complaint, filed on December 2, 2013, sets forth three causes of action. Count 1 asserts a claim

premised upon illegal search and seizure, false arrest, and false imprisonment. (Compl. at p. 2.)

Count 2 asserts a claim for malicious prosecution. (*Id*.) Count 3 asserts a claim for willful

misconduct.  (*Id.* at p. 3.)[6]  Plaintiff avers that he suffered a loss of freedom, continuous

humiliation, defamation of his character, and other harms as a result of the Defendants' alleged

misconduct.  (*Id.* at p. 4.)  Based on these allegations, Plaintiff seeks compensatory damages,

punitive damages, special damages, and "whatever Damages that this Honorable Court renders."

(*Id*. at p. 3.)

On February 7, 2014, Defendant Collier Township filed its motion to dismiss the

complaint (ECF No. 7) and supporting brief (ECF No. 8).  Thereafter, this Court entered its

standard order on motions practice (ECF No. 9), directing that responses to dispositive motions

be filed within twenty-one days.  (*Id*. at ¶ 2.)  By the terms of the Court's order, Plaintiff's

response to Collier Township's motion to dismiss was due on or before February 28, 2014.

On March 3, 2014 Plaintiff filed a motion asserting that he had not yet received any

response from Collier Township to the complaint and requesting this Court to compel Collier

Township to serve Plaintiff with its response.  (ECF No. 16.)  In light of Plaintiff's

representation that he had not received Collier Township's motion to dismiss and brief in

support, this Court granted Plaintiff's motion and ordered Collier Township to re-serve those

papers upon Plaintiff and file a certificate of said service.  (ECF No.17.)  Collier Township did

so on March 4, 2014.  (ECF No. 18.)  By April 3, Plaintiff still had not responded to Collier

Township's motion to dismiss, so this Court entered an order directing Plaintiff to show cause,

on or before April 17, 2014 why his claims against the Township should not be dismissed.  (ECF

No. 24.)

---

[6] Because Plaintiff appears to be asserting violations of his federal rights under the Fourth and Fourteenth
Amendment to the U.S. Constitution, the Court construes Plaintiff's first two causes of action as claims brought
under 42 U.S.C. §1983.  Accordingly, this Court has subject matter jurisdiction over Counts 1 and 2 pursuant to 28
U.S.C. §§ 1331 and 1343(a).  The Court construes Count 3 as asserting a claim under Pennsylvania law.  Subject
matter jurisdiction over that claim exists pursuant to 28 U.S.C. 1367(a).

On April 17, Plaintiff filed his response to the show cause order, claiming that he still had not been served with Collier's Township's motion to dismiss and asking that the Court sanction Collier Township. (ECF No. 27.) Four days later, Collier Township responded to these allegations by stating that it had twice served Plaintiff with copies of its motion at Plaintiff's address of record. (*See* Resp. to Pl.'s "Show of Cause" [ECF No. 28] at ¶6.) The Township noted that, based on documents filed by Plaintiff, he was apparently receiving mailings from the Court at that same address and had not explained why he would not be receiving the Township's mailings to that address as well. (*Id*. at ¶ 7.)

By order dated April 23, 2014, this Court ordered Collier Township to serve its motion and brief upon Plaintiff once again at his address of record, this time by U.S. Certified Mail, Return Receipt Requested. (ECF No. 29.) The Court allowed Plaintiff thirty (30) days from his receipt of the motion in which to file his response. (*Id*.) Collier Township complied with the Court's directive (ECF No. 30) and filed the receipt of service, which shows that Collier Township's motion to dismiss and supporting brief were delivered to Plaintiff's address of record on April 29, 2014 and signed for by "Leo Jackson." (ECF Nos. 31 and 31-1.)

In accordance with this Court's order of April 23, 2014, Plaintiff's response to Collier Township's motion was due on or before May 29, 2014. However, as of June 4, no response had been filed. Accordingly, the Court entered an order that same date directing that Plaintiff show good cause, on or before June 18, 2014, why his claims against Collier Township should not be dismissed in light of his failure to respond to the Township's motion (ECF No. 33.) To date, Plaintiff has not made any good cause showing, nor has he responded to Collier Township's motion to dismiss the complaint.

On April 11, 2014, a separate motion to dismiss (ECF No. 25) and supporting brief (ECF No. 26) were filed on behalf of Officer Eric Davis, Officer Ronald Zygumtowicz, and the Collier Township Police Department (ECF No. 25). Pursuant to the Court's standard briefing order, Plaintiff's response to the motion was due on or before May 2, 2014, but no response was filed. On May 6, 2014, the Court issued an order directing Plaintiff to show cause, on or before May 20, 2014, why his claims against these Defendants should not be dismissed in light of Plaintiff's failure to respond their motion. (ECF No. 32.) To date, Plaintiff has neither proffered a showing of good cause nor responded to the motion filed by Officer Davis, Officer Zygumtowicz, and the Collier Township Police Department.[7]

Also pending before the Court is a motion to dismiss the complaint filed on behalf of Officer Paul Able, Officer Shawn Arlett, the Scott Township Police Department, and the Municipality of Scott Township (collectively referred to as the "Scott Township Defendants"). (ECF No. 11.) This motion and the Defendants' supporting brief (ECF No. 12) were filed on February 18, 2014.[8] Plaintiff filed his response to the motion on March 7, 2014 (ECF No. 20), and the Scott Township Defendants filed their reply (ECF No. 23) on March 17, 2014.

---

[7] The Court notes that the arguments made by Collier Township in favor of dismissal largely mirror the arguments that are being asserted by Defendants Davis, Zygumtowicz, and the Collier Township Police Department. For the sake of simplicity, when addressing the arguments raised by these parties, the Court will refer to the foregoing Defendants collectively as the "Collier Township Defendants."

[8] The Scott Township Defendants also filed in support of their motion a Concise Statement of Material Facts (ECF No. 13) and an Appendix (ECF No. 14), which was subsequently supplemented (ECF No. 22). These filings consist of rulings issued by the trial and appellate courts in the underlying state criminal proceedings of Plaintiff and his co-defendant, Jennifer Ballard. As we explain, *supra,* at n. 1, the Court will take judicial notice of those rulings.

### III. STANDARD OF REVIEW

In their respective motions, the various moving Defendants invoke Rule 12(b)(1), (b)(5), and (b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b)(1) addresses claims over which the court lacks subject matter jurisdiction, while Rule 12(b)(5) addresses insufficient service of process and Rule 12(b)(6) addresses claims that fail to state a cognizable cause of action.

#### A. Rule 12(b)(1)

When a district court analyzes a motion under Rule 12(b)(1), "its first task is to classify the [defendant's] motion as either a factual attack or a facial attack." *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008).  A facial attack "concerns 'an alleged pleading deficiency' whereas a factual attack concerns 'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *Id*. (alterations in the original) (*citing U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir.2007)).

A court reviewing a facial attack "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 347 (3d Cir. 2012) (*quoting Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).  In addition, the court may consider matters of public record.  *See Medici v. Pocono Mountain Sch. Dist.*, Civ. A. No. 09–cv–2344, 2010 WL 1006917 at *2 (M.D. Pa. Mar.16, 2010) (citation omitted); *Jones v. Butler*, Civ. A. No. 09–3128, 2009 WL 2461885, at *1 and n. 12 (E.D. Pa. Aug. 11, 2009) (citing authority).

A factual attack on jurisdiction differs from a facial attack in that "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*

*v. First Federal Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In resolving a factual challenge under Rule 12(b)(1), "the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." *Gould Electronics Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000) (*citing Mortensen*, 549 F.2d at 891). *See also Gordon v. East Goshen Twp.*, 592 F. Supp. 2d 828, 836-37 (E.D. Pa. 2009). It is the plaintiff's burden to demonstrate that federal subject matter jurisdiction exists over his claims. *See Hedges v. United State*s, 404 F.3d 744, 750 (3d Cir.2005)("[T]he plaintiff must bear the burden of persuasion" in connection with a motion to dismiss brought pursuant to Rule 12(b)(1)) (*quoting Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.1991)).

B. Rule 12(b)(5)

Pursuant to Rule 12(b)(5), the court may dismiss a case for "insufficiency of service of process." Fed. R. Civ. P. 12(b)(5). "The party asserting the validity of service bears the burden of proof on that issue." *Grand Enterainment Group, Ltd. v. Star Media Sales*, *Inc.* 988 F.2d 476, 488 (3d Cir.1993). That party must do so by a preponderance of the evidence using affidavits, depositions, and oral testimony. *State Farm Mut. Auto. Ins. Co. v. Tz'doko V'Chesed of Klausenberg*, 543 F. Supp. 2d 424, 428 (E.D. Pa. 2008) (*quoting Villanova v. Solow*, Civil Action No. 97–6684, 1998 WL 643686, at *1 (E.D. Pa. Sept. 18, 1998)).

C. Rule 12(b)(6)

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Eid v. Thompson,* 740 F.3d 118, 122 (3d Cir.

2014) (*quoting Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)).   To survive a Rule 12(b)(6) challenge, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level...."  *Id.* (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id. (quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Although the Court must accept the allegations in the complaint as true, "[it is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski,* 719 F.3d 160, 165 (3d Cir. 2013) (*quoting Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir.2007)).  In addition, merely pleading facts consistent with liability is not sufficient; the plaintiff must plead facts which permit the court to make a reasonable inference that defendant is liable.  *Twombly*, 550 U.S. at 570.

Generally, a district court may not consider matters outside of the Complaint when ruling on a Rule 12(b)(6) motion to dismiss.  "If, on a motion under Rule 12(b)(6)…, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  An exception to this rule exists whereby courts may consider, for Rule 12(b)(6) purposes:  (i) exhibits that are attached to the complaint, (ii) matters of public record, and (iii) any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.  *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir.1993).

    D.  <u>Pro Se Litigant</u>

14

In this case, Plaintiff is proceeding *pro se*. Pleadings and other submissions by a *pro se* litigant are subject to liberal construction. *Salley v. Secretary Pennsylvania Dept. of Corrections,* --- F. App'x ---, 2014 WL 1706351 *3 (3d Cir. 2014); *Higgs v. Att'y Gen*., 655 F.3d 333, 339 (3d Cir. 2011). Nevertheless, for Rule 12(b)(6) purposes, a pro se complaint must still "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Salley, supra*, at *3 (*quoting Ashcroft,* 556 U.S. at 678). In addition, a plaintiff's *pro se* status does not excuse him from the requirement that service be properly effectuated. *See Sykes v. Blockbuster Video,* 205 F. App'x 961(3d Cir. 2006) (*pro se* plaintiff who claimed he did not receive the court's order directing him to comply with the requirements of Fed. R. Civ. P. 4 failed to establish "good cause" for failing to effectuate service in a timely manner; plaintiff "was still expected to comply with the rules of procedure, as are all litigants, whether they are represented by counsel or not"); *Soni v. Holtzer,* 2007 WL 38910 *2 (D.N.J. 2007) ("Plaintiff's pro se status does not excuse her from effecting proper service.")(citing *Sykes, supra,* at 961).

## IV. DISCUSSION

A. <u>Plaintiff's Federal §1983 Claims</u>

The Court will first consider the Defendants' various arguments for dismissal as they relate to Plaintiff's federal claims. The Court construes Counts 1 and 2 of the complaint as asserting claims under 42 U.S.C. §1983 for the alleged violation of Plaintiff's federal constitutional rights. Section 1983 provides private citizens a right of action against:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ...

42 U.S.C. §1983. This statute does not create substantive rights but instead "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996).

To state a viable claim under 42 U.S.C. § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Lomax v. U.S. Senate Armed Forces Service Committee,* 454 F. App'x 93, 95 (3d Cir. 2011) (*quoting West v. Atkins*, 487 U.S. 42, 48 (1988)). Because there is no question that the Defendant police officers acted under color of state law, our analysis focuses on whether Plaintiff has alleged a deprivation of his constitutional rights. Here, Plaintiff asserts that Defendants violated the Fourth Amendment's proscription against unreasonable searches and seizures by: (i) submitting him to a false arrest and imprisonment on December 26, 2005; (ii) conducting an unlawful search of the van he was in on that date and an unlawful seizure of contraband found therein; and (iii) subjecting him to a malicious prosecution.[9] The Court will consider each of these theories, and the Defendants' related challenges, in turn. First, however, we must consider a threshold jurisdictional issue.

*1. Defendants' Jurisdictional Challenge (the Rooker-Feldman Doctrine)*

Plaintiff's complaint is premised upon his fundamental assertion that the officers' inventory search of the van, which led to the discovery of drug-related contraband, was unlawful.

---

[9] Plaintiff actually asserts violations of his rights under the Fourth and Fourteenth Amendments. Although the Fourth Amendment's prescription against unreasonable search and seizure technically applies only to the federal government, it has long been recognized that the Fourth Amendment's protections are incorporated into the Fourteenth Amendment's Due Process Clause and are thereby enforceable against state actors as well. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961)(noting that the Fourth Amendment's right of privacy has been declared enforceable against the States through the Due Process Clause of the Fourteenth Amendment). For the sake of simplicity, the Court will refer only to the Fourth Amendment in discussing Plaintiff's federal §1983 claims.

The Scott Township Defendants argue that, notwithstanding Plaintiff's assertions, the Pennsylvania Superior Court found the officers' search of the van on December 26, 2005 to be a lawful inventory search and the Pennsylvania Supreme Court denied allocatur. As a consequence, Defendants argue, there was no violation of Plaintiff's constitutional rights, and Plaintiff cannot state a viable claim under §1983. The Scott Township Defendants further contend that, to the extent Plaintiff is arguing for a finding in this Court that the search of the van was unconstitutional, this Court is precluded from doing so under the *Rooker-Feldman* Doctrine. This Court does not agree.[10]

The *Rooker*-Feldman Doctrine holds that federal district courts lack jurisdiction over lawsuits that are "essentially appeals from state-court judgments." *Van Tassel v. Hodge,* --- F. App'x ---, 2014 WL 1758894 *2 (3d Cir. May 5, 2014) (citing *Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 165 (3d Cir.2010)). The doctrine applies where "(1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Id.* (*quoting Great Western Mining*, 615 F.3d at 166) (internal quotation marks omitted) (alterations in the original).

*Rooker-Feldman* abstention is not warranted in this case because this is not a situation wherein a federal plaintiff, having lost in state court, is now inviting the district court to reject the state court's judgment. Although Plaintiff's conviction on the various drug-related charges

---

[10] Because Defendants' *Rooker-Feldman* argument presents a factual challenge to this Court's subject matter jurisdiction, we can consider and weigh evidence outside the pleadings in order to determine if jurisdiction exists. *See Mason v. Bank of America, N.A.,* Civil Action No. 13–3966, 2013 WL 5574439 at *4 (E.D. Pa. Oct. 10, 2013); *Adams v. Costello*, No. 96–4377, 1998 WL 242600 at *2 (E.D. Pa. May 13, 1998).

was initially affirmed by the Pennsylvania Superior Court, his criminal docket shows that those same convictions were later reversed in connection with proceedings under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S.A. §9541 *et seq*. *See* Docket Sheet in *Commonwealth v. Jackson*, No. CP-02-CR-4322-2006 (C.C.P. Allegheny Cty.) at pp. 1, 7. Plaintiff avers in his complaint that he was released from prison on December 5, 2011 following the PCRA court's ruling. (Compl. at p. 1.) He further avers that the PCRA court's ruling was premised on the Superior Court's decision in *Commonwealth v. Ballard* that the drug evidence should have been suppressed because the officers did not conduct a valid inventory search of the van. (Compl. at p. 1.) Although the PCRA court's ruling is not part of the record in this case, Plaintiff's averment as to the basis for his PCRA relief is consistent with the timeline of proceedings in the *Jackson* and *Ballard* cases.[11]

In their reply brief in support of their motion to dismiss, the Scott Township Defendants suggest that Plaintiff may be attempting to mislead the Court in suggesting that the Pennsylvania Superior Court invalidated the search of the van. (*See* Defs.' Reply to the Resp.to the Mot. to Dismiss Filed on Behalf of the Scott Twp. Defs. [ECF No. 23] at 3 ("[C]ontrary to representations by Plaintiff, there is no decision of the Superior Court holding that the search of the van was unconstitutional.").) To support their position, Defendants have provided a copy of the Superior Court's initial ruling in *Commonwealth v. Ballard,* No. 2028 WDA 2007 (Pa. Super.

_____

[11] This Court takes judicial notice of the fact that the Superior Court vacated Ballard's judgment of sentence for the drug-related offenses on April 21, 2011. *See* Appeal Docket Sheet, *Commonwealth v. Ballard,* 2028 WDA 2007 (Pa. Super. Ct.) at p. 4 (entry of April 21, 2011). *See also Commonwealth v. Ballard*, No. 2028 WDA 2007 at 13 (Pa. Super. Ct. April 21, 2011) (*per curiam*). That ruling was entered on the docket of the Allegheny Court of Common Pleas on June 1, 2011. *See* Docket Sheet in *Commonwealth v. Ballard*, No. CP-02-CR-4318-2006 (C.C.P. Allegheny Cty.) at p. 9. Plaintiff filed his PCRA motion on June 28, 2011 and subsequently filed an emergency motion to reverse and vacate his conviction on July 7, 2011. *See* Docket Sheet in *Commonwealth v. Jackson, supra,* at p. 13. Jackson's PCRA motion was granted on November 16, 2011, and he was ordered at that time to appear before the court for re-sentencing on December 2, 2011. *Id*. at p. 14. On December 1, 2011, his convictions on the drug-related offenses were vacated. *Id*. at pp. 7-8.

Ct. Feb. 18, 2010), wherein the court applied the coordinate jurisdiction doctrine and declined to consider Ballard's argument challenging the search of the van. (*See* Ex. D to Defs.' Suppl. Appendix [ECF No. 22-1], *Commonwealth v. Ballard, supra.*) As we have previously discussed, however, the appellate docket shows that this ruling was later vacated by the Pennsylvania Supreme Court on January 12, 2011 based on the Supreme Court's conclusion that the Superior Court had erroneously applied the coordinate jurisdiction rule. The case was remanded to the Superior Court with instructions that it conduct a merits review of Ballard's challenge to the legality of the inventory search of the van. *See* Allocatur Docket Sheet, *Commonwealth v. Ballard,* 279 WAL 2010 (Pa.) (*Per Curiam* Order dated Jan. 12. 2011). On remand, the Superior Court issued its April 21, 2011 ruling invalidating the search of the van, relevant parts of which Plaintiff appended to his brief in opposition to the motion to dismiss filed by the Scott Township Defendants. *See* Pl.'s Reply to Scott Twp. Def.s' Untimely Resp., Ex. A [ECF No. 20-1], Excerpt from Non-Precedential and Non-Published Decision in *Commonwealth v. Ballard*, No. 2028 WDA 2007 at 12-13 (Pa. Super. Ct. April 21, 2011) (*per curiam*).

In light of the foregoing, there is no basis to conclude that Plaintiff was attempting to mislead this Court when he alleged that his drug-related convictions were overturned because of the Superior Court's ruling that the search of the van was not a valid inventory search. Rather, this Court finds that Plaintiff's allegations and submissions are consistent with the docket sheets from the *Jackson* and *Ballard* cases, all of which collectively support the inference that Plaintiff was granted PCRA relief, and his drug-related convictions were overturned, after the PCRA court applied the ruling in *Ballard* to find the search of the van unconstitutional. Accordingly, based on the record that is presently available, the Court is not persuaded that the *Rooker-Feldman* doctrine precludes it from exercising subject matter jurisdiction over this case.

*2. Defendants' Rule 12(b)(5) Challenge*

We will next consider the Collier Township Defendants' argument that this Court lacks

personal jurisdiction over them due to Plaintiff's failure to properly effectuate service of the

complaint upon them.  Pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure, a

complaint may be dismissed for insufficient service of process.  Fed. R. Civ. P. 12(b)(5).

Rule 4(j) outlines the requirements for service of process on a local government such as

Collier Township.  The rule provides, in relevant part, that "a municipal corporation[ ] or any

other state-created governmental organization that is subject to suit must be served by:  (A)

delivering a copy of the summons and of the complaint to its chief executive officer; or (B)

serving a copy of each in the manner prescribed by that state's law for serving a summons or like

process on such a defendant."  Fed. R. Civ. P. 4(j)(2).  Under Pennsylvania law, process is served

upon a political subdivision by handing the relevant copies to:

> (1) an agent duly authorized by the political subdivision to receive service of
> process, or
>
> (2) the person in charge at the office of the defendant, or
>
> (3) the mayor, or the president, chairman, secretary or clerk of the tax levying body
> thereof, and in counties where there is no tax levying body, the chairman or clerk of
> the board of county commissioners.

Pa. R.C.P. 422(b).

Rule 4(e) of the Federal Rule of Civil Procedure governs service upon individual

defendants.  Under this rule, service may be made upon an individual by:

> (A) delivering a copy of the summons and of the complaint to the individual
> personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode
> with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to
> receive service of process.

Fed. R. Civ. P. 4(e)(2).  Alternatively, for purposes of this lawsuit, valid service could be effected upon the individual defendants by any method authorized under Pennsylvania law.  Fed. R. Civ. P. 4(e)(1).  This would include having the sheriff hand a copy of the summons and complaint to the defendant or the defendant's agent or to the person in charge of the defendant's residence, office, or usual place of business.  Pa. R.C.P. 400, 402.

Service of the complaint and summons must be made within 120 days of the date that the complaint is filed.  Fed. R. Civ. P. 4(m).  Moreover, unless service has been waived or is made by the U.S. Marshal, "proof of service [must] be made to the court … by the server's affidavit." Fed. R. Civ. P. 4(l).

In this case, no affidavit of service has been filed, nor has Plaintiff submitted any waiver of process by the Collier Township Defendants.  In fact, the only evidence Plaintiff has submitted to demonstrate proof of service is a certified mail receipt showing that a mailing was made to Collier Township via the U.S. Postal Service on January 15, 2014.  (ECF No. 6.) However, service cannot be properly effectuated through the postal system, even by certified mail, unless the defendant waives service.  *See Moody v. Nat'l Elec. Warranty,* No. 11-CV-106, 2012 WL 4981993 *2 (W.D. Pa. 2012) (citation omitted) ("[P]roper service cannot be effected through the postal system, including certified mail.")(citation omitted); *Collins v. Lincoln Caverns, Inc.,* Civil No. 1:CV–11–0355, 2011 WL 1930659 *1 (M.D. Pa. 2011) ("Plaintiff's attempt at service by certified mail was improper… Unless an individual defendant waives service under Rule 4(d)(3) and (4), service may not be made by mail.").

Accordingly, the Court agrees that Plaintiff has failed to properly effectuate service of process upon the Collier Township Defendants within the requisite 120 day period.  Pursuant to Rule 4(m),

> [i]f a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4. For purposes of Rule 4(m), the Third Circuit Court of Appeals has "equated good cause with the concept of excusable neglect ..., which requires a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules." *Mathies v. Silver,* 450 F. App'x 219, 222 (3d Cir. 2011) (quoting *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995)). In determining whether good cause exists, courts look to factors such as (1) the reasonableness of plaintiff's efforts to effect service, (2) any prejudice to the defendant which may result from the lack of timely service, and (3) whether the plaintiff moved for an enlargement of time to serve. *Id.* (*quoting MCI Telecomms. Corp.*, 71 F.3d at 1097-98); *Rice v. Sniezek,* Civil Action No. 1:10–CV–2636, 2012 WL 4069758 *1 n.3 (M.D. Pa. Sept. 17, 2012) (quoting *MCI Telecomms., supra*, at 1097). However, "the primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." *MCI Telecomms. Corp., supra*, at 1097.

Here, Plaintiff has made no effort to properly effectuate service upon the Collier Township Defendants in the seven months since this action commenced, beyond his one inadequate attempt to serve the Township by U.S. mail. He has not sought an enlargement of time in order to make proper service, nor has he proffered any reason for his failure to comply with the 120-day time limit for service. Indeed, as is outlined above in the Court's discussion of the procedural history of this case, Plaintiff has utterly failed to respond to the Rule 12(b)(5) arguments raised by the Collier Township Defendants despite having been given ample time to

do so.  Moreover, Plaintiff has failed to respond to two separate orders entered by this Court directing Plaintiff to show cause why the claims against the Collier Township Defendants should not be dismissed.  Although the Court does not perceive any unusual prejudice to the Collier Township Defendants as a result of Plaintiff's failure to make proper service, the other aforementioned considerations weight heavily against a finding of good cause in this case. Accordingly, this Court concludes that Plaintiff has not shown good cause for his failure to effectuate service of process within the applicable 120-day time period.

Even where good cause has not been shown to exist, however, district courts undertake discretionary consideration of whether dismissal of the action would be inappropriate.  *Mathies v. Silver,* 450 F. App'x at 222 (*citing Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir.1995)).  In making this determination, courts consider factors such as whether the statute of limitations would foreclose the plaintiff from re-filing his claims, whether the defendant attempted to evade service, and whether there are any other equitable considerations bearing on the propriety of dismissal.  *See id*. (*citing Petrucielli*, 46 F.3d at 1305–07).  None of these factors counsel in favor of a further extension of time to effectuate service.  There is no evidence in this case to suggest that the Collier Township Defendants have attempted to evade service. Furthermore, a dismissal of the Plaintiff's complaint would not inappropriately foreclose him from re-filing his claims against the Collier Township Defendants because, as we discuss below, each of Plaintiff's federal claims was time-barred already at the time this action was commenced and/or subject to a Rule 12(b)(6) dismissal on other grounds.  Finally, no other equitable considerations are present as might render a dismissal inappropriate.  Accordingly, for all of the reasons discussed, the Collier Township Defendants' motion for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(5) will be granted.

23

### 3. *Rule 12(b)(6) Challenges*

The Defendants have also asserted numerous grounds for dismissing Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). We consider the Defendants' arguments seriatim.

#### a) STATUTE OF LIMITATIONS

Count 1 of the Complaint alleges violations of Plaintiff's Fourth Amendment rights based on the Defendants' involvement in searching the van, seizing contraband from the van, and allegedly subjecting Plaintiff to an unlawful arrest. Defendants have moved to dismiss these claims as time-barred.[12]

Pennsylvania's two-year statute of limitations for personal injuries, 42 Pa. C.S.A. §5524, is applicable to federal civil rights claims brought pursuant to 42 U.S.C. § 1983. *Mumma,* 400 F. App'x at 631; *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 78 (3d Cir.1989). However, "the accrual date for a § 1983 claim is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis in original). As a general rule, accrual occurs "when the plaintiff has a complete and present cause of action, … that is, when the plaintiff can file suit and obtain relief." *Id*. (internal quotation marks and citations omitted).

---

[12] "Though a statute of limitations defense generally cannot be raised by way of a Rule 12(b)(6) motion, an exception known as the 'Third Circuit Rule' permits this when the statute of limitations bar is apparent on the face of the complaint." *Mumma v. High-Spec, Inc.*, 400 F. App'x 629, 631 (3d Cir. 2010) (*citing Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital*, 435 F.3d 396, 400 n. 14 (3d Cir.2006)). For purposes of this exception, district courts may also consider matters of public record. *See id*. at 631 n. 1 (citing authority).

Where a plaintiff asserts a Fourth Amendment violation arising from an allegedly unconstitutional search, the accrual date runs from the time of the search. *See, e.g., Voneida v. Stoehr*, 512 F. App'x 219, 221 (3d Cir.2013); *Woodson v. Payton*, 503 F. App'x 110, 112 (3d Cir. 2012). With respect to Fourth Amendment claims based on false arrest and imprisonment,[13] the limitations period accrues when the wrongful detention ends – i.e., when the arrestee becomes detained pursuant to legal process by virtue of being bound over by a magistrate judge, *e.g.*, or arraigned on charges. *Wallace,* 549 U.S. at 389-90, 397; *Hunt v. City of Scranton*, 236 F. App'x 740, 743 (3d Cir.2007).

Here, Plaintiff's Fourth Amendment claim based on the officers' search of the van and seizure of drug-related evidence accrued on December 26, 2005, the date on which the search and seizure occurred. Plaintiff's false arrest and false imprisonment claims accrued no later than March 16, 2006, when Plaintiff's criminal charges were held for court. *See* Docket Sheet, *Commonwealth v. Jackson,* CP-02-CR-4322-2006 at pp. 3-4. Because Plaintiff did not file his complaint until December 2, 2013 – well outside the two-year limitations period, the Fourth Amendment claims set forth in Count 1 are untimely.

Plaintiff nevertheless contends that, pursuant to Pennsylvania's "discovery rule," the limitations period did not begin to run until his drug-related convictions were reversed and

---

[13] Fourth Amendment false imprisonment claims are similar to those for false arrest in that both theories are "grounded in the Fourth Amendment's guarantee against unreasonable seizures." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir.1995) (citations omitted). "False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. at 388. In *Wallace,* the Supreme Court addressed the plaintiff's false arrest and imprisonment claims collectively as a claim for false imprisonment because the latter theory was most relevant in light of plaintiff's detention pursuant to a warrantless arrest. *See* 549 U.S. at 389 (noting that the common law tort of false imprisonment provided "the proper analogy" for the plaintiff's claim because "[t]he sort of unlawful detention remediable by the tort of false imprisonment is detention *without legal process,…* and the allegations before us arise from respondents' detention of petitioner *without legal process,*" in that respondents "did not have a warrant for his arrest") (emphasis in the original) (internal citations omitted). A similar situation exists in this case, as Plaintiff's false arrest and false imprisonment arise from his warrantless arrest on December 26, 2005.

vacated by the Allegheny County Court of Common Pleas on December 1, 2011.  This argument lacks merit.

"Under Pennsylvania law, the so-called 'discovery rule' tolls the accrual of the statute of limitations when a plaintiff is unable, '*despite the exercise of due diligence*, to know of the injury or its cause.'" *Hynoski v. Columbia County Redevelopment Authority,* 485 F. App'x 559, 562 (3d Cir. 2012) (*quoting Mest v. Cabot Corp*., 449 F.3d 502, 510 (3d Cir.2006)) (internal quotation marks omitted) (emphasis in the original).  "Under the discovery rule, the statute of limitations does not begin to run until 'the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct.'" *Id*. (quoting *Mest, supra,* at 510).

Because Plaintiff was present when the van was searched on December 26, 2005, he was possessed of sufficient facts as of that date to know of his injury and who caused it.  *See Woodson,* 503 F. App'x at 112 (plaintiff's §1983 claim that defendant violated his Fourth Amendment right against unreasonable searches and seizures accrued when the search and seizure occurred – "in other words, the moment that [plaintiff] indisputably knew about the alleged faults of search and seizure"); *MacNamara v. Hess,* 67 F. App'x 139, 143 (3d Cir. 2003) (plaintiffs, who were present when their home was searched and business records were seized, had knowledge of the injury on that date; thus, "any Fourth-Amendment-based claim accrued on the same day as the allegedly unlawful search and seizure"); *Powell v. Fedak,* civil Action No. 14-569, 2014 WL 351559 *2 (E.D. Pa. Jan. 30, 2014) ("The complaint reflects that the seizure of plaintiff's DNA took place on December 16th and 18th of 2009.  At that point, plaintiff's claims based on those seizures had accrued, and he was or should have been aware of the facts giving rise to his claims.").  In fact, the judicial record from Plaintiff's underlying state criminal

proceedings discloses that Plaintiff (unsuccessfully) attempted to suppress the evidence seized from the van on the grounds that the search had been unconstitutional. This motion was litigated in the criminal trial court in June of 2007. *See* Docket Sheet, *Commonwealth v. Jackson,* CP-02-CR-4322-2006 at p. 10. Thus it is clear that, more than six years before the instant litigation was commenced, Plaintiff knew, or reasonably should have known, of the facts giving rise to his unlawful search claim.[14]

Similarly, the discovery rule cannot save Plaintiff's false arrest and imprisonment claim. The state judicial record discloses that Plaintiff, Ballard, and Ray were arrested on various theft-related charges stemming from their conduct in the Walmart store on December 26, 2005. A criminal information was filed against Plaintiff that same date. Plaintiff's initial arraignment occurred on December 27, 2005, and the charges were bound over on March 16, 2006. *See* Docket Sheet, *Commonwealth v. Jackson,* CP-02-CR-4322-2006 at pp. 2-3. Any injury to Plaintiff arising out of his arrest was certainly known, or reasonably should have been known, to him as of that time. *See Pittman v. Metuchen Police Dep't,* 441 F. App'x 826, 828 (3d Cir. 2011) (*per curiam*) (plaintiff's claims of false arrest and false imprisonment accrued no later than

---

[14] It is not clear from the record precisely what arguments Plaintiff's counsel raised during the suppression court hearing in connection with his challenge of the officers' search of the van, nor is it clear how counsel's arguments may have differed from the challenges which Ballard successfully raised in connection with her direct appeal. For present purposes, however, the point is irrelevant. It is clear from the Superior Court's decision in *Commonwealth v. Ballard* that, in vacating Ballard's PWID and related convictions, the Superior Court relied on evidence that had been offered during the underlying suppression hearing. Because those facts were known, or could have been known, as of June 2007, Plaintiff cannot logically claim that the discovery rule prevented his claim from accruing until December of 2011. Moreover, it is critical to note that the Superior Court overturned Ballard's drug-related convictions on April 21, 2011, and that decision was entered on the trial court's docket as of June 1, 2011. Thus, even if the Superior Court's decision in *Ballard* presented a new basis for challenging the search of the van which had previously been unknown to Plaintiff, this new information would have been discoverable, through the exercise of due diligence, no later than June 2011, and Plaintiff's claim would have therefore accrued at that point. Under any of these scenarios, the limitations period for Plaintiff's §1983 claim arising from the search of the van expired well before the filing of the complaint in this case.

when his arrests and detention occurred); *Rolax v. Whitman,* 175 F. Supp. 2d 720, 727 (D.N.J. 2001)(noting that the discovery rule has been held to be inapplicable to §1983 cases of false arrest because, in such case, "the plaintiff will be aware both of his injury, i.e., the wrongful arrest, and those responsible for that injury, i.e., the police, at the time of arrest, therefore no delay in the accrual of the cause of action is necessary"). To the extent Plaintiff is claiming that the alleged deficiencies in his arrest stem from the officers' unlawful search of the van, the Court's previously analysis applies. Accordingly, Plaintiff's false arrest and imprisonment claims cannot be rendered timely by virtue of the discovery rule.

Plaintiff next argues that he was precluded from filing his Fourth Amendment claims until his drug convictions were overturned on December 1, 2011. Quoting from the Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994), Plaintiff observes that:

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a [§] 1983 Plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance [of] a writ of habeas corpus, 28 U.S.C. [§] 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under [§] 1983.

(Pl.'s Reply to Def. Scott Township's Untimely Resp. [ECF No. 20] at 3.) Based on this rule, Plaintiff maintains that his Fourth Amendment claims are timely because they were not cognizable until such time as his drug-related convictions were overturned.

This argument lacks merit insofar as it relates to Plaintiff's Count 1 claims. In *Wallace v. Kato,* the Supreme Court expressly rejected the theory that *Heck v. Humphrey* controls the commencement of the limitations period for §1983 claims that would otherwise accrue prior to date of the plaintiff's criminal conviction. *See generally* 549 U.S. at 393 (rejecting the theory

that "an action which would impugn *an anticipated future conviction* cannot be brought until that

conviction occurs and is set aside") (emphasis in the original). Thus, the Court in *Wallace*

"refused to extend [the deferred accrual rule of] *Heck* to a § 1983 claim for false arrest in which

there was no outstanding conviction at the time of the accrual.... The Court ... clarified that the

*Heck* bar is applicable only when, at the time the § 1983 suit would normally accrue, there is an

existing criminal conviction." *Dique v. N.J. State Police*, 603 F.3d 181, 187 (3d Cir.2010)

(citing *Wallace*, 549 U.S. at 393). Following *Wallace*, federal courts have routinely held, with

respect to Fourth Amendment claims premised on illegal search and seizure or false arrest and

imprisonment, that the limitations period is not tolled by the pendency of criminal proceedings.

*See, e.g., Rodwell v. Weaver*, 2012 WL 4955249 at *5 (D.N.J. Oct. 10, 2012) (in an illegal search

claim, the "limitations period is not tolled by the pendency of state criminal proceedings);

*Goodwin v. New Jersey*, Civil No. 12–1040 (FLW), 2012 WL 3532894 at *7 (D.N.J. Aug. 13,

2012) (holding that *Heck's* deferred accrual rule did not apply to Plaintiff's Fourth Amendment

false arrest/imprisonment claim); *Callahan v. Borough of Bristol*, Civil Action No. 11–6977,

2012 WL 3104669 at *3 n. 7 (E.D. Pa. July 31, 2012) ([B]ecause, under ordinary accrual rules, a

claim for false arrest or false imprisonment accrues before there is any conviction, *Heck* does

not delay accrual of such claims.); *Hilton v. Kronenfeld*, Civil Action No. 04-6420(SDW), 2008

WL 305276 at *9(D.N.J. Jan. 29, 2008) ("Because a judgment in a § 1983 action for false arrest,

illegal search and seizure, false imprisonment, and excessive force would not necessarily imply

the invalidity of a conviction or sentence, the Heck bar is inapplicable, and these claims accrue

the moment the victim knows [ ] or should know of the injury.") (internal footnote omitted).

At the time that Plaintiff's claims for false arrest/ imprisonment and unlawful search

accrued, his criminal charges were still pending and he had not yet been convicted on any counts.

The pendency of those criminal proceedings did not serve to toll the running of the statute of limitations and, consequently, Plaintiff's Fourth Amendment claims arising from his arrest and the officers' search of the van accrued well over two years prior to the filing of this lawsuit. Because Plaintiff did not assert his Count 1 claims within the applicable two-year statute of limitations, those claims are now time-barred and must be dismissed.

b) PROBABLE CAUSE

Defendants next argue that Plaintiff's §1983 false arrest and malicious prosecution claims must be dismissed because Plaintiff cannot establish that his arrest and prosecution were unsupported by probable cause. "The absence of probable cause is an essential element of both false arrest [15] and malicious prosecution [16] claims, and such claims cannot proceed if probable cause existed — regardless of whether the arrests at issue were a wise or typical use of police resources." *Young v. City of Pittsburgh,* --- F. App'x ----, 2014 WL 1328005 *5 (3d Cir. April 4, 2014) (citing *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir.1988)).

An arresting officer has probable cause "whenever reasonably trustworthy information or circumstances within [the] officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed by the person being arrested." *United States v. Laville*, 480 F.3d 187, 194 (3d Cir.2007). Importantly, the constitutional

---

[15] "To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes–Barre*, 700 F.3d 675, 680 (3d Cir.2012) (*citing Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir.1995)).

[16] To state a claim for Fourth Amendment malicious prosecution in a §1983 action, a plaintiff must show that "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007).

validity of an arrest does not depend on whether the accused actually committed any crime, or whether a person is later acquitted of the crime of arrest. *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005). Probable cause is determined by the "totality of the circumstances," *Illinois v. Gates*, 462 U.S. 213, 238 (1983), and must be evaluated "with reference to the facts and circumstances within the officer's knowledge at the time of the investigative stop or arrest." *Laville*, 480 F.3d at 194. Thus, in considering whether probable cause exists, the Court will "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal quotation marks omitted).

Defendants contend that Plaintiff's convictions on charges of attempted retail theft and criminal attempt to commit theft by deception conclusively establish probable cause for his arrest and prosecution. This argument clearly has merit insofar as it relates to Plaintiff's claims for false arrest and false imprisonment. Plaintiff's undisturbed convictions on the charges of attempted theft establish, as a matter of law, that the Defendant officers had probable cause to arrest him for those offenses. *See Shelley v. Wilson,* 339 F. App'x 136, 139 (3d Cir. 2009) (plaintiff's conviction on charges of harassment and stalking with intent to cause emotional distress conclusively established probable cause for plaintiff's arrest, despite his acquittal on other charges stemming from the same incident); *Batista v. Miller*, Civil Action No. 12-297, 2013 WL 6145551*4 (W.D. Pa. Nov. 21, 2013)("Conviction establishes as a matter of law that the arrest was supported by probable cause.")(citing *Shelley, supra,* at 139). *Accord McClam v. Barry*, 697 F.2d 366, 370 (D.C.Cir.1983), *overruled on other grounds*, *Brown v. U.S.*, 742 F.2d 1498 (D.C.Cir.1984) (as to common law and constitutional law false arrest claims, a plaintiff's "subsequent conviction establishes as a matter of law that the arrest was justified") (cited with

approval in *Shelley v. Wilson, supra,* at 139). The fact that Plaintiff's drug-related convictions were ultimately overturned is irrelevant for purposes of his false arrest claim, because "[p]robable cause need only exist as to any offense that could be charged under the circumstances." *Barna v. City of Perth Amboy,* 42 F.3d 809, 819 (3d Cir. 1994).

It is less clear whether Plaintiff's theft convictions similarly preclude him from establishing a lack of probable cause for purposes of his Fourth Amendment malicious prosecution claim. In *Wright v. City of Philadelphia,* 409 F.3d 595, 604 (3d Cir. 2005), the Third Circuit Court of Appeals ruled that, where probable cause was shown to exist for one criminal charge lodged against the plaintiff, this would dispose of the plaintiff's malicious prosecution claims arising from all of his other criminal charges as well. However, the Court of Appeals subsequently limited this rule to situations where "the circumstances leading to the arrest and prosecution were totally intertwined." *Johnson v, Knorr*, 477 F.3d 75, 82 n.9 (3d Cir. 2007). In *Johnson,* the Court of Appeals distinguished the situation in *Wright,* wherein "a defendant police officer merely 'prepared an affidavit of probable cause for [the plaintiff's] arrest, 409 F.3d at 598, and then, after an assistant district attorney approved the affidavit, arrested the plaintiff.'" *Johnson,* 477 F.3d 84 (alteration in the original). Thus, in *Wright*, [the officers'] involvement apparently ended at the time of the arrest." *Id.* In *Johnson,* by contrast, the defendant officer's involvement in both the arrest and the initiation of criminal proceedings "was more extensive and lasted beyond the issuing of an affidavit of probable cause for his arrest, and the arrest itself," *Id.* The *Johnson* Court declined to apply the rule of *Wright* under these facts, *id.*, and explained:

> we do not understand Wright to establish legal precedent of such broad
> application that it would "insulate" law enforcement officers from liability for
> malicious prosecution in all cases in which they had probable cause for the arrest

> of the plaintiff on any one charge. *See Posr [v. Doherty]*, 944 F.2d at 100. As was true of the result reached by the district court in *Posr*, the result reached by the district court here would allow law enforcement officers to "tack on more serious, unfounded charges" for which there was not probable cause either for the arrest or for the initiation of criminal proceedings merely because there was probable cause for the arrest on any charge. *See id.*

477 F.3d at 83-84. Subsequently, the Third Circuit in an *en banc* decision observed that *Wright* and *Johnson* were "difficult to reconcile," and that, to the extent those cases were in "unavoidable conflict," *Wright* would govern as the earlier-decided case. *Kossler v. Crisanti,* 564 F.3d 181, 194 n.8 (3d Cir. 2009).

In the wake of these decisions, federal district courts within this circuit have arrived at varying conclusions concerning *Johnson's* impact on §1983 malicious prosecution claims. *C.f. Piazza v. Lakkis,* Civil Action No. 3:11-cv-2130, 2012 WL 2007112 at *11 (M.D. Pa. June 5, 2012) (concluding that probable cause must exist as to each criminal charge brought against an individual in order to defeat a claim for malicious prosecution), and *Posey v. Swissvale Borough,* Civil Action No. 2:12-cv-955, 2013 WL 989953 *10 (W.D. Pa. March 13, 2013) (concluding, in agreement with the "majority of lower court decisions" that, if probable cause is present as to any one count, an individual charged on multiple counts cannot state a §1983 claim for malicious prosecution).

Even if Plaintiff's theft convictions do not dispose of his malicious prosecution claim in its entirety, however, the judicial record of Plaintiff's underlying criminal proceedings nevertheless precludes Plaintiff from plausibly asserting a lack of probable cause for his prosecution on the drug offenses. As this Court's discussion of the background facts makes clear, Plaintiff was charged with two counts of possession of a controlled substance, two counts of possession with intent to distribute a controlled substance, and possession of drug

33

paraphernalia[17] only after he, Ballard, and Ray were found to have been travelling in a van that contained a digital scale and numerous small baggies of marijuana and crack cocaine ostensibly packed for resale and having a substantial street value.  The discovery of this evidence, and the fact that Plaintiff, Ballard, and Ray had just previously been observed attempting to purchase electronic equipment with a stolen credit card and stolen identification, were sufficient to support an objectively reasonable belief that Plaintiff was engaged in drug trafficking and possession of drug-related contraband.  *See Maryland v. Pringle*, 540 U.S. 366, 373 (2003) (the "quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him"); *Cox v. Pate*, 283 F. App'x 37, 40 (3d Cir.2008) ("Based on the contraband recovered..., we agree with the District Court that there was probable cause to arrest [plaintiff], who was one of the occupants of the hotel room"); *Walker v. City of Trenton*, Civ. No. 11–7231, 2013 WL

---

[17] In relevant part, Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act prohibits the following acts:

> (16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, … unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.
>
> …
>
> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, … or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.
>
> …
>
> (32) The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

35 Pa. Stat. §780-113(16), (30), (32).

353346, *6 (D.N.J. Jan.29, 2013) (granting motion to dismiss malicious prosecution claim and finding probable cause as a matter of law to arrest all occupants of premises based on the quantity of drugs found inside).

Notably, Plaintiff does not deny that the aforementioned drugs and drug paraphernalia were recovered from the van in which he was travelling, nor does he assert his innocence with respect to that contraband. Rather, his malicious prosecution claim is apparently based upon the theory that the Defendant officers deliberately engaged in an investigatory search of the van, rather than a legitimate inventory search, and this unreasonable search and seizure ultimately yielded evidence which could not validly be used against Plaintiff in a criminal proceeding. Implicitly, Plaintiff appears to be suggesting that the exclusion of this evidence from his criminal proceedings necessarily precludes the Defendants from establishing, in this case, that there was probable cause to charge him with the drug offenses.

This theory is misguided, because the state court's suppression of drug evidence does not prevent this Court from considering such evidence in connection with its analysis of Plaintiff's §1983 claims. *See Woodyard v. County of Essex,* 514 F. App'x 177 (3d Cir. 2013) (for purposes of Fourth Amendment malicious prosecution claim, the criminal trial court's subsequent suppression of certain witnesses' out-of-court identifications was irrelevant to a determination of whether probable cause supported the arrest warrant and the indictment.); *Cox v. Pate,* 283 F. App'x at 40 (notwithstanding the exclusion of evidence from use in plaintiff's criminal proceeding, such evidence could support a finding of probable cause in plaintiff's subsequent §1983 action for false arrest)(*citing United States v. Calandra*, 414 U.S. 338, 348 (1974) (instructing that "standing to invoke the exclusionary rule has been confined to situations where the Government seeks to use such evidence to incriminate the victim of the unlawful search");

*Hector v. Watt,* 235 F.3d 154, 157 (3d Cir.2000) ("Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy ... but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." (*quoting Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir.1999)); *Kovala v. Steele*, Civil Action No. 1:09–cv–00801, 2011WL 1828514 *5 n.10 (M.D. Pa. May 11, 2011) (granting qualified immunity to defendant on Fourth Amendment malicious prosecution claim and noting that the fact that evidence was ultimately suppressed in plaintiff's criminal proceeding did not vitiate its relevance to a probable cause determination in a §1983 malicious prosecution claim.) (*citing Hector v. Watts*, supra, at 157); *Grendysa v. Evesham Tp. Bd. of Educ.*, No. Civ.A. 02-1493(FLW), 2005 WL 2416983 *10 (D.N.J. Sept. 27, 2005) (noting in dicta that plaintiff's inculpatory statements, although suppressed in his criminal prosecution, would "likely [be] admissible in the suit for malicious prosecution").

In sum, then, the judicial record in this case establishes as a matter of law that the Defendant officers had probable cause to charge Plaintiff with the offenses of possession of a controlled substance, possession with intent to deliver a controlled substance, and possession of drug paraphernalia. Because Plaintiff has not pled a plausible deprivation of his Fourth Amendment rights based on theories of false arrest, false imprisonment, or malicious prosecution, those claims must be dismissed.

c) MUNICIPAL LIABILITY

Defendants Collier Township and Scott Township have also challenged Plaintiff's allegations relative to their own liability. In his complaint, Plaintiff alleges that these entities "can be held liable pursuant to the Pennsylvania Subdivision Tort Claims Act (PSTCA) and 42 U.S.C. 1983 as an entity." (Compl. at p. 3.)

In *Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 690 (1978), the Supreme Court held that "municipalities and other local government units [are] included among those persons to whom § 1983 applies." However, "[a] necessary predicate for a § 1983 municipal liability claim is a constitutional violation." *Bittner v. Snyder County, PA,* 345 F. App'x 790, 793 (3d Cir. 2009). Because Plaintiff has failed to allege a plausible violation of his federal constitutional rights, it follows that there can be no municipal liability for such violation on the part of Scott Township or Collier Township.

The complaint also names as defendants the Scott Township Police Department and the Collier Township Police Department. Putting aside the fact that Plaintiff has failed to plead a predicate constitutional violation, his claims against the Scott Township and Collier Township Police Departments must be dismissed because police departments and other departments of a municipality are not separate legal entities from the municipality and cannot, therefore, be sued separately under §1983. *See Bonenberger v. Plymouth Twp*., 132 F.3d 20, 25 n. 4 (3d Cir.1997); *Neil v. Allegheny County*, Civil Action No. 12–0348, 2012 WL 3779182 *1 n.1 (W.D. Pa. Aug. 31, 2012).

### B. Plaintiff's State Law Claim for "Willful Misconduct"

Plaintiff's third cause of action appears to assert a claim for "willful misconduct." Plaintiff avers, with respect to this claim, that "[his] rights under [the] 4th and 14th Amendment and 42 Pa. Cons. Stat. 8550 were violated by Defendant Officers due to the fact that [they] willfully and intentionally conducted an illegal search and seizure." (Compl. at p. 3.)

To the extent Plaintiff is attempting to assert a separate cause of action under Pennsylvania law premised on the Defendants' alleged willful misconduct, this claim must be dismissed inasmuch as "willful misconduct" is not a recognized cause of action under

Pennsylvania law. *See Johnston v. Dauphin Borough,* Civil Action No. 1:05-CV-1518, 2006 WL 1410766 *7 (M.D. Pa. May 22, 2006) (dismissing plaintiff's cause of action for "willful misconduct" in derogation of Pennsylvania law where the complaint did not set forth a theory of recovery and cited only to 42 Pa. C.S.A. §8550, a statutory exception to governmental immunity; court noted that "'willful misconduct' is not an independent cause of action").[18]

In addition, Defendants Davis, Zygumtowicz, and Collier Township Police Department correctly note that any such claim, even if cognizable, would be time-barred. Pennsylvania's two-year statute of limitations applies to Count 3, which is premised on the officers' alleged misconduct in conducting an illegal search and seizure. *See generally* 42 Pa. C.S.A. §5524 (7) (two-year limitations period applies with respect to actions for injuries "to person or property which is founded on negligent, intentional, or otherwise tortious conduct" that are not otherwise subject to a specific limitations period). For the reasons previously discussed, Plaintiff knew or reasonably should have known of his injury, and the Defendants' role in causing that injury, as of December 26, 2005 when the unlawful search occurred or, at the very latest, in June of 2007 when the matter was litigated in the state court proceedings. Because Plaintiff did not file this lawsuit until December of 2013, any claim for alleged willful misconduct arising out of the search of the van is now time-barred.

---

[18] Under Pennsylvania's "Political Subdivision Tort Claims Act," 42 Pa.C.S. §§ 8541–8542, local agencies are immune from liability for injuries caused by an act of the agency, its employees or any other person. *See id.* at §8541. This immunity extends to employees of the local agency who are acting within the scope of their official duties. *Id.* at §8545. Such immunity is abrogated, with respect to individuals, only for conduct constituting a crime, actual fraud, actual malice or willful misconduct. *See id.* at §8550.

C. Plaintiff's Allegations of Defamation

Lastly, the Court notes Plaintiff's allegations that his "character was severely defamed, due to the fact that he was labeled as a 'drug dealer', a 'felon'[,] a 'jailbird', and other things." (Compl. at p. 4.) This allegation is set forth in the complaint in support of Plaintiff's claim for damages, not as a separate cause of action. Nevertheless, to the extent that Plaintiff is attempting to assert a cause of action for defamation under Pennsylvania law, the Defendants correctly observe that Plaintiff's averments fail to plead an actionable claim.

Pursuant to 42 Pa. C.S.A. §8343 (a), a plaintiff asserting a claim for defamation has the *prima facie* burden of proving: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. *See Joseph v. Scranton Times L.P.*, 959 A.2d 322, 335 (Pa. Super. Ct. 2008) (citing 42 Pa. C.S.A. §8343(a)). Despite Plaintiff's allegation that he was labelled a "drug dealer," a "felon," and a "jailbird," Plaintiff does not specify in his complaint when such comments were made, by whom, or in what context the communications occurred. Nowhere in the complaint does Plaintiff attribute any specific defamatory communications to the named Defendants. Thus, his pleading fails to set forth a plausible claim for defamation under Pennsylvania law.

In addition, any defamation claim arising from Plaintiff's drug convictions is time-barred. Pennsylvania applies a one-year limitations period to defamation claims. *See* 42 Pa. C.S.A. §5523(1). Plaintiff's conviction relative to the drug charges occurred in September of 2007, more than six years before this action was filed. Moreover, even if this Court were to assume,

39

for the sake of argument, that the defamation claim did not accrue until Plaintiff's drug-related convictions were overturned in December of 2011, the claim would still be untimely.  Plaintiff did not file this complaint until two years after the drug convictions were vacated.  Accordingly, no viable claim exists for defamation based on the facts alleged in this case.

## V.  CONCLUSION

Based upon the foregoing reasons, Plaintiff's complaint must be dismissed for failure to state any claim upon which relief could be granted.  In addition, Plaintiff's claims against the Collier Township Defendants must be dismissed for failure to effectuate proper service of the complaint and summons.  In a civil rights case, a court must *sua sponte* allow a plaintiff leave to amend his or her complaint unless it would be inequitable or futile to do so.  *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008); *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir.2004).  Based on the discussion above, the Court finds that the pleading deficiencies in Plaintiff's claims cannot be cured through further amendment.  Accordingly, no further amendment will be permitted, and the complaint will be dismissed, with prejudice.[19]

An appropriate order follows.

*/s/ Nora Barry Fischer*

Nora Barry Fischer
United States District Judge

cc:   Charles Jackson
      536 North Fairmont Street
      Pittsburgh, PA  15206
      (via regular and certified mail)

      All counsel of record (via CM/ECF)

---

[19] In light of this Court's disposition of the pending motions, the Defendants' remaining arguments relating to the dismissal of specific claims or forms of relief need not be addressed.